UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY UTILITIES (CALPECO ELECTRIC) LLC,<br><br>Defendant. | No. 2:25-cv-02057-DC-SCR<br><br>ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO ENTER CONSENT DECREE<br><br>(Doc. Nos. 9, 18) |

This is an environmental suit brought by a private enforcer under the Resource Conservation and Recovery Act ("RCRA"), the Clean Water Act ("CWA"), and California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"). This matter is before the court on the motion to enter the parties' consent decree pursuant to the CWA and Proposition 65 filed by Plaintiff Ecological Rights Foundation on August 12, 2025. (Doc. No. 9.) Defendant Liberty Utilities (CalPeco Electric) LLC does not oppose the pending motion. (Doc. No. 10.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 15.) For the reasons explained below, the court will deny Plaintiff's motion to enter a consent decree, without prejudice.

**BACKGROUND**

Plaintiff is a non-profit public benefit corporation that focuses on protecting surface waters and groundwater from pollution and degradation. (Doc. No. 1 at 7.) Defendant is a private

1

1  electric utility company providing electrical service to the north and south shores of Lake Tahoe,
2  California, as well as surrounding rural areas. (*Id.* at 1.) Plaintiff alleges that Defendant operates
3  three facilities in the Lake Tahoe area where Defendant stores and maintains utility poles and
4  other wood materials treated with pentachlorophenol and other pollutants identified by the State
5  of California as causing cancer or reproductive toxicity. (*Id.* at 1–2.) Plaintiff also alleges that
6  Defendant has improperly managed the treated wood products at its facilities such that the
7  pollutants contaminate nearby soil and are discharged with storm water into local water bodies,
8  including Lake Tahoe. (*Id.* at 3.)

9  Defendant's alleged improper management "may present an imminent and substantial
10 endangerment to health and the environment," in violation of the RCRA. (*Id.* at 60.) Plaintiff also
11 alleges that Defendant's discharge of pollutants in storm water violates the CWA because
12 Defendant does not have the required permit for such discharges. (*Id.* at 9, 61.) Plaintiff further
13 alleges that the discharges violate Proposition 65 because the chemicals in those discharges
14 "pass[] or probably will pass into any source of drinking water." (*Id.* at 62.)

15 On July 23, 2025, Plaintiff filed the complaint asserting three claims against Defendant:
16 (1) violations of the RCRA; (2) violations of the CWA; and (3) violations of Proposition 65.
17 (Doc. No. 1 at 60–62.) Plaintiff seeks an order enjoining Defendant from improperly discharging
18 pollutants into nearby waters and ordering Defendant to pay civil penalties, as well as Plaintiff's
19 reasonable costs of suit, including attorneys' fees. (*Id.* at 63-64.)

20 On August 2, 2025, just ten days after filing the complaint, Plaintiff filed a notice of
21 settlement to inform the court that "[t]he parties are in the process of executing a settlement in the
22 form of a [Proposed] Consent Decree." (Doc. No. 6.)

23 On August 12, 2025, Plaintiff filed the pending motion to enter the parties' consent
24 decree. (Doc. No. 9.) On August 22, 2025, Defendant filed a statement of non-opposition. (Doc.
25 No. 10.) On September 2, 2025, Plaintiff filed a reply in support of its motion. (Doc. No. 12.) On
26 September 30, 2025, Plaintiff filed a notice of expiration of 45-day agency review period that is
27 required under the CWA and Proposition 65. (Doc. No. 17.) On November 14, 2025, the parties
28 filed a joint request regarding the status of the pending motion. (Doc. No. 18.)

**LEGAL STANDARD**

"A consent decree is 'essentially a settlement agreement subject to continued judicial policing.'" *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). "Before approving a consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate and reasonable." *Oregon*, 917 F.2d at 580. When reviewing a consent decree, a court must independently review its terms to avoid "rubber stamp approval." *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th Cir. 1995).

In addition to these general requirements, a private enforcer must satisfy certain statutory requirements under both the CWA and Proposition 65 before a court enters a proposed consent decree. The CWA states that no "consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator." 33 U.S.C. § 1365(c)(3). Proposition 65 also requires that a private enforcer submit to the California Attorney General any proposed settlement and supporting documentation at least 45 days before the hearing seeking entry of the consent decree. Cal. Code Regs. tit. 11, § 3003(a).

**ANALYSIS**

**A.   Notice Requirements Under the CWA and Proposition 65**

Here, Plaintiff provided the proposed consent decree to the California Attorney General, the United States Department of Justice, and the United States Environmental Protection Agency on August 4, 2025. (Doc. No. 9-4 at ¶¶ 19-20.) On September 30, 2025, Plaintiff informed the court that the 45-day agency review period required under both statutes had expired. (Doc. No. 17 at p. 1.) Thus, Plaintiff has satisfied the notice requirements under both the CWA and Proposition 65.

**B.   Proposition 65 Private Enforcer Requirements**

In addition to formal notice to the California Attorney General, Proposition 65 requires that a court reviewing a private enforcer's proposed Proposition 65 consent judgment make three findings: (1) whether the warning required by the settlement complies with Proposition 65

3

requirements[1]; (2) whether the award of attorney's fees is reasonable under California law; and (3) whether the proposed penalty amount is reasonable. Cal. Health & Safety Code § 25249.7(f)(4)(A)-(C). The "trial court must look at the three factors and if any of those factors are not present it can't approve the settlement." *Consumer Def. Grp. v. Rental Hous. Indus. Members*, 137 Cal. App. 4th 1185, 1207 (2006).

1. The Proposed Award of Attorneys' Fees

Courts use the lodestar method to determine the appropriate attorney fee award. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (2003). Under the lodestar method, "a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for the attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The court may "take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* Under California law, "the fact that the defendant agreed to pay the fee does not automatically render the fee reasonable." Cal. Code Regs. Tit. 11, § 3201(a).

Here, Plaintiff requests attorneys' fees in the total amount of $283,421, allocated as follows[2]:

| Attorney | Position/Years of Experience | Hourly Rate | Total Hours |
| --- | --- | --- | --- |
| Christopher Sproul | Partner / 39 years | $1170 | 10 |
| Fredric Evenson | Of Counsel / 27 years | $1130 | 89 |
| Brian Orion | Associate / 20 years | $1085 | 13.9 |
| Marla Fox | Associate / 13 years | $945 attorney work $325 paralegal work | 271.3[3] |
| Stuart Wilcox | Associate / 13 years | $945 | 11.3 |

(Doc. No. 9-4 at ¶ 33.)

---

[1] Plaintiff's claim is brought under California Health and Safety Code section 25249.5, which does not require Proposition 65 warnings. (Doc. No. 9-1 at 5-6.) Thus, the proposed consent decree does not have any warning requirement for the court to assess.

[2] Plaintiff asserts that its lodestar in this matter is over $391,000, but pursuant to the parties' agreement, Plaintiff requests an award of the reduced amount of $283,421.

[3] Plaintiff does not indicate how many of Ms. Fox's hours were spent on attorney work.

1    Every timekeeper except for Mr. Orion avers that they kept contemporaneous time records
2    in this matter using timekeeping software. (Doc. No. 9-4 at ¶ 32; Doc. No. 9-7 at ¶ 9; Doc. No. 9-
3    11 at ¶ 16; Doc. No. 9-13 at ¶ 11.) Plaintiff did not provide those records for the court's review.
4    Based on the evidence before it, the court cannot determine that Plaintiff's counsel
5    reasonably expended almost 400 hours litigating this matter. As noted above, the notice of
6    settlement was entered *ten days* after Plaintiff filed the complaint. While Plaintiff indicates that
7    substantial pre-litigation investigation took place before the filing of the complaint, the court
8    cannot determine whether such extensive work was appropriate without a more detailed record of
9    the hours expended and the tasks completed. *See United Steelworkers of Am. v. Ret. Income Plan*
10   *for Hourly-Rated Emps. of Arasco, Inc.*, 512 F.3d 555, 565 (explaining that the party seeking
11   attorneys' fees bears "the burden of documenting the appropriate hours expended in the
12   litigation" and must "submit evidence in support of those hours worked" such that "a neutral
13   judge can make a fair evaluation of the time expended, the nature and need for the service, and
14   the reasonable fees to be allowed.") (citations omitted).
15   Moreover, Plaintiff does not cite any cases in this district holding that counsel's proposed
16   hourly rates are reasonable considering the prevailing local rate for an attorney with the skill
17   required to perform this litigation. Upon the court's initial review, Plaintiff's counsels' proposed
18   rates far exceed those approved for attorneys practicing environmental litigation in the Eastern
19   District of California. *See Cal. Sportfishing Prot. All. v. Pac. Bell Tel. Co.*, No. 2:21-cv-0073-
20   JDP, 2025 WL 2799004, at *3-4 (E.D. Cal. Sep. 30, 2025) (approving hourly rate of $725.00 for
21   attorneys with 30+ years' experience, but denying proposed rate off $650.00 for attorneys with
22   24+ years' experience and $575.00 for attorneys with 15+ years' experience in Proposition 65
23   claim) (collecting cases); *Cal. Open Lands v. Butte Dep't Of Pub. Works*, No. 2:20-cv-00123-
24   DJC-DMC, 2024 WL 4819205, at *4 (E.D. Cal. Nov. 15, 2024) (reducing hourly rate of
25   $1,015.00 for attorney with 30+ years' experience and $935 for attorney with 24+ years'
26   experience in case brought under Clean Water Act).
27   Thus, Plaintiff has not borne its burden of showing that the proposed attorneys' fees are
28   reasonable in either the hours expended or the proposed hourly rate. Should Plaintiff choose to

submit a renewed motion to approve a consent judgment, it must substantiate the requested attorneys' fee award.

While the court's finding that the proposed attorneys' fees are not reasonable is alone sufficient to deny this motion, the court will nonetheless address the reasonableness of the proposed civil penalties, given that the parties may elect to return to the drawing board and refile a request for entry of a consent decree.

2. <u>Reasonableness of Civil Penalty Amount</u>

Courts are tasked with reviewing proposed Proposition 65 settlements for reasonableness because such settlements have preclusive effect on other private enforcers who may wish to bring a future claim against the defendant. As a California appellate court has explained:

> The legislature has expressed concern about such settlements, in which a defendant attempts to insulate itself against future litigation by entering into a comprehensive settlement with a private enforcer on terms that enrich the private enforcer but do little to benefit the public . . . In response to this concern, the Legislature did not strip Proposition 65 settlements of preclusive effect, but instead increased oversight of settlements involving private enforcers.

*Consumer Advoc. Grp. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 685 (2008). In determining whether a civil penalty is reasonable, the court considers: (1) the nature and extent of the violation; (2) the number of, and severity of, the violations; (3) the economic effect of the penalty on the violator; (4) whether the violator took good faith measures to comply with Proposition 65 and when those measures were taken; (5) the willfulness of the violator's misconduct; (6) the deterrent effect that the imposition of the penalty will have on both the violator and the regulated community; and (7) any other factor that justice may require. Cal. Health & Safety Code § 25249.7(b)(2)(A)–(G).

If the proposed consent decree were entered as requested, Defendant would be ordered to pay $35,000.00 in civil penalties under Proposition 65. (Doc. No. 9-2 at ¶ 38.) That penalty amount would then be allocated in accordance with California Health and Safety Code sections 25249.12(c)(1), (d), such that 75% of the penalty ($26,250.00) would be paid to the California Office of Environmental Health Hazard Assessment, and 25% of the penalty ($8,750.00) would be paid directly to Plaintiff. (*Id.*) Additionally, Defendant would be ordered to pay Plaintiff

6

1  $30,000.00 for "oversight costs" of the settlement and pay $30,000.00 in mitigation fees to a
2  third-party nonprofit called the Tahoe Fund. (*Id.* ¶¶ 39, 36.) Thus, of the $378,421.00 in total
3  settlement funds contemplated by the proposed consent decree, $26,250.00 (roughly 7% of the
4  total amount) will be paid in civil penalties to the Office of Environmental Health Hazard
5  Assessment, while $322,171.00 (roughly 85%) of the settlement amount, will be paid directly to
6  Plaintiff and Plaintiff's counsel.

7  To support this proposed amount of civil penalty, Plaintiff argues that Defendant "denies
8  any violation of Proposition 65," "will remove sources of Listed Chemicals," and will "take
9  further actions that will further reduce or eliminate the discharge or release of Listed Chemicals
10 from the three facilities." (Doc. No. 9-1 at 15.) Additionally, Plaintiff notes that Defendant
11 "negotiated the [Proposed] Consent Decree in good faith," and "incurred its own attorneys' fees
12 and costs and agreed to reimburse [Plaintiff] for a portion of its attorneys' fees and costs," such
13 that the total cost "demonstrates to [Defendant] that it must be aware of and must comply with
14 Proposition 65, [but] is not so severe that it will unduly impede [Defendant's] business
15 operations." (*Id.*) Finally, Plaintiff argues that "it is reasonable to expect that other utilities that
16 use similar utility poles treated with Listed Chemicals will become aware of this settlement and
17 the financial costs to [Defendant], providing incentive for them to avoid discharges or releases of
18 Listed Chemicals from their operations as well." (*Id.*)

19 However, Plaintiff fails to provide any evidence as to the profitability of Defendant's
20 enterprise from which the court could determine the extent of the economic effect of the
21 $35,000.00 penalty.[4] Plaintiff also fails to provide any evidence of the nature or extent of
22 Plaintiff's alleged violations, and fails to indicate whether Defendant's violations were willful
23 (other than to say that Defendant continues to deny any violation).

24 Finally, while the proposed consent decree does include injunctive measures requiring
25 Plaintiff to institute best management practices relating to the storage and disposal of potential

---

[4] Plaintiff argues in the motion that the payment of attorneys' fees is further deterrence to Defendant, but does not cite to any authority stating that proposed attorneys' fees should be considered in this manner when determining the reasonableness of the civil penalty.

7

pollutants in its facilities, the court is concerned that emails Plaintiff exchanged with the California Attorney General's office appear to have been inadequately addressed. Specifically, in an email dated August 30, 2025, a staff member expressed "concerns" related to the proposed best management practices and said that "it would be advisable for [Plaintiff] to take the settlement off calendar and try to address the issues raised." (Doc. No. 12-7 at 2.) In response, Plaintiff's Counsel indicated that Plaintiff would like to schedule a call with the Attorney General's office to address those concerns ahead of the hearing on the motion, which was scheduled for October 3, 2025. (Doc. No. 12-8 at 2.) Plaintiff filed its reply brief attaching those emails as exhibits on September 2, 2025, and there is no mention in that brief of any follow-up phone call or discussion that assuaged the concerns that had been raised. The notice Plaintiff filed on September 30, 2025 regarding the expiration of the agency review period likewise does not mention any further discussions with the Attorney General's office. Further, the joint request for a status update that the parties filed on November 14, 2025 does not provide any additional information. Thus, the court has not received any indication that such a conversation took place, nor that the concerns raised had been sufficiently addressed such that there was no need for any modifications to the proposed consent decree. Therefore, in addition to lacking sufficient evidence to determine whether the proposed civil penalty is reasonable, the court finds that the Attorney General's concerns relating to the proposed injunctive measures, and the apparent failure of Plaintiff to address those concerns, constitute another consideration that counsels against approving the parties' proposed consent judgment. Accordingly, the court will deny Plaintiff's motion to enter the parties' consent decree.

## CONCLUSION

For the reasons explained above,

1. Plaintiff's motion to enter consent judgment (Doc. No. 9) is DENIED, without prejudice;
2. Plaintiff may file a renewed motion to enter a consent judgment that provides the court with sufficient evidence to determine whether the requested attorneys' fees are reasonable, whether the proposed civil penalty is reasonable, and addressing

the California Attorney General's concerns relating to the proposed injunctive relief; and

3. The parties' joint request for a status update regarding Plaintiff's motion (Doc. No. 18) is DENIED as having been rendered moot by this order.

IT IS SO ORDERED.

Dated:  **December 10, 2025**  

Dena Coggins
United States District Judge

9