UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY UTILITIES (CALPECO ELECTRIC), LLC, <br><br> Defendant. | No. 2:25-cv-02057-DC-SCR <br><br> ORDER GRANTING PLAINTIFF'S MOTION TO ENTER CONSENT DECREE <br><br> (Doc. No. 21) |

This is an environmental suit brought by Plaintiff Ecological Rights Foundation, a private enforcer under the Resource Conservation and Recovery Act ("RCRA"), the Clean Water Act ("CWA"), and California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"). Before the court is Plaintiff's renewed motion requesting the court enter the parties' consent decree pursuant to the CWA and Proposition 65. (Doc. No. 21.) Defendant Liberty Utilities (CalPeco Electric), LLC does not oppose the pending motion. (Doc. No. 23.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 25.) For the reasons explained below, the court will grant Plaintiff's motion and enter the parties' proposed consent decree.

## BACKGROUND

Plaintiff is a non-profit public benefit corporation that focuses on protecting surface waters and groundwater from pollution and degradation. (Doc. No. 1 at 7.) Defendant is a private

1

electric utility company providing electrical service to the north and south shores of Lake Tahoe, California, as well as surrounding rural areas. (*Id.* at 1.) Plaintiff alleges that Defendant operates three facilities in the Lake Tahoe area where Defendant stores and maintains utility poles and other wood materials treated with pentachlorophenol and other pollutants identified by the State of California as causing cancer or reproductive toxicity. (*Id.* at 1–2.) Plaintiff also alleges that Defendant has improperly managed the treated wood products at its facilities such that the pollutants contaminate nearby soil and are discharged with storm water into local water bodies, including Lake Tahoe. (*Id.* at 3.)

According to Plaintiff, Defendant's alleged improper management "may present an imminent and substantial endangerment to health and the environment," in violation of the RCRA. (*Id.* at 60.) Plaintiff also alleges that Defendant's discharge of pollutants in storm water violates the CWA because Defendant does not have the required permit for such discharges. (*Id.* at 9, 61.) Plaintiff further alleges that the discharges violate Proposition 65 because the chemicals in those discharges "pass[] or probably will pass into any source of drinking water." (*Id.* at 62.)

On July 23, 2025, Plaintiff filed the complaint initiating this action, asserting three claims against Defendant: (1) violations of the RCRA; (2) violations of the CWA; and (3) violations of Proposition 65. (Doc. No. 1 at 60–62.) Plaintiff seeks an order enjoining Defendant from improperly discharging pollutants into nearby waters and ordering Defendant to pay civil penalties, as well as Plaintiff's reasonable costs of suit, including attorneys' fees. (*Id.* at 63–64.)

On August 2, 2025, ten days after filing the complaint, Plaintiff filed a notice of settlement to inform the court that "[t]he parties are in the process of executing a settlement in the form of a [Proposed] Consent Decree." (Doc. No. 6.) On August 12, 2025, Plaintiff filed a motion to enter the parties' consent decree, which the court denied without prejudice on December 11, 2025. (Doc. Nos. 9, 19.) In particular, the court identified several issues with that initial motion, including that (i) Plaintiff presented insufficient evidence to support a determination that Plaintiff's requested attorneys' fees were reasonable; (ii) Plaintiff presented insufficient evidence to support a determination that the proposed civil penalty amount was reasonable; and (iii) Plaintiff did not address concerns raised by the California Attorney General's office regarding the

2

proposed consent decree. (*Id.* at 4–8.)

On January 16, 2026, Plaintiff filed a renewed motion to approve the parties' consent decree in which Plaintiff "address[es] the issues identified in the [prior] Order." (Doc. Nos. 21; 21-1 at 8.) On January 30, 2026, Defendant filed a statement of non-opposition to the renewed motion. (Doc. No. 23.) On February 9, 2026, Plaintiff filed a reply thereto. (Doc. No. 24.)

**LEGAL STANDARD**

"A consent decree is 'essentially a settlement agreement subject to continued judicial policing.'" *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). "Before approving a consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate and reasonable." *Oregon*, 917 F.2d at 580. When reviewing a consent decree, a court must independently review its terms to avoid "rubber stamp approval." *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th Cir. 1995).

In addition to these general requirements, a private enforcer must satisfy certain statutory requirements under both the CWA and Proposition 65 before a court enters a proposed consent decree. The CWA states that no "consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator." 33 U.S.C. § 1365(c)(3). Proposition 65 also requires that a private enforcer submit to the California Attorney General any proposed settlement and supporting documentation at least 45 days before the hearing seeking entry of the consent decree. Cal. Code Regs. tit. 11, § 3003(a).

**ANALYSIS**

**A.    Notice Requirements Under the CWA and Proposition 65**

Here, Plaintiff provided the proposed consent decree to the California Attorney General, the United States Department of Justice, and the United States Environmental Protection Agency on August 4, 2025. (Doc. No. 22 at ¶ 29.) On September 30, 2025, Plaintiff informed the court that the 45-day agency review period required under both statutes had expired. (Doc. Nos. 17 at p. 1; 22 at ¶ 46.) Thus, Plaintiff has satisfied the notice requirements under both the CWA and

Proposition 65.

**B.      Proposition 65 Private Enforcer Requirements**

In addition to formal notice to the California Attorney General, Proposition 65 requires that a court reviewing a private enforcer's proposed Proposition 65 consent judgment make three findings: (1) whether the warning required by the settlement complies with Proposition 65 requirements[1]; (2) whether the award of attorney's fees is reasonable under California law; and (3) whether the proposed penalty amount is reasonable. Cal. Health & Safety Code § 25249.7(f)(4)(A)-(C). The "trial court must look at the three factors and if any of those factors are not present it can't approve the settlement." *Consumer Def. Grp. v. Rental Hous. Indus. Members*, 137 Cal. App. 4th 1185, 1207 (2006).

1.      The Proposed Award of Attorneys' Fees

Courts use the lodestar method to determine the appropriate attorney fee award. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (2003). Under the lodestar method, "a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for the attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Courts may "take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Under California law, "the fact that the defendant agreed to pay the fee does not automatically render the fee reasonable." Cal. Code Regs. Tit. 11, § 3201.

Here, the parties have agreed to a settlement amount of $283,421, which consists of Plaintiff's attorneys' fees and costs.[2] Plaintiff calculated this amount based on the hourly rates

---

[1] Plaintiff's claim is brought under California Health and Safety Code section 25249.5, which does not require Proposition 65 warnings. (Doc. No. 21 at 15 n.4.) Thus, the proposed consent decree does not have any warning requirement for the court to assess.

[2] Plaintiff notes that, in the order denying Plaintiff's first motion to approve consent decree, the court referred to this amount solely as attorneys' fees. (Doc. No. 21-1 at 17.) Plaintiff clarifies that this amount also compensates Plaintiff's for case costs, including costs spent on an investigative expert. (*Id.*) Plaintiff further notes that, as of filing, Plaintiff had incurred a total of $476,129.60 in total attorneys' fees and $13,732.84 in case costs. (*Id.*) Thus, the number sought

4

and total hours expended by its attorneys as reflected in the following table:

| Attorney | Position/Years of Experience | Hourly Rate | Total Hours |
|---|---|---|---|
| Christopher Sproul | Partner / 39 years | $1165 | 31.5 |
| Fredric Evenson | Of Counsel / 27 years | $700 | 105.1 |
| Brian Orion | Associate / 20 years | $1085 | 13.8 |
| Marla Fox | Associate / 13 years | $945 | 355.6 |
| Stuart Wilcox | Associate / 13 years | $945 | 12.1 |

(Doc. No. 21-7.)

In the order denying Plaintiff's initial motion to enter the consent decree, the court found that it could not "determine that Plaintiff's counsel reasonably expended almost 400 hours litigating this matter" because "the notice of settlement was entered *ten days* after Plaintiff filed the complaint." (Doc. No. 19 at 5.) The court further noted that all but one of Plaintiff's counsel "avers that they kept contemporaneous time records in this matter using timekeeping software" but "Plaintiff did not provide those records for the court's review." (*Id.*)

In the pending motion, Plaintiff remedies the deficiencies identified in the court's prior order by attaching copies of the timekeeping records showing each timekeeper's time expended on this matter, as well as the date of performance and a description of each task. (Doc. Nos. 21-6, 21-15, 21-17, 21-19, 22-11.) Plaintiff further explains that, though the notice of settlement was filed ten days after Plaintiff filed the complaint in this matter, the case "did involve much complex analysis, investigation, and fact development," including substantial hours spent "investigating, developing, filing, and negotiating resolution of this matter." (Doc. No. 21-1 at 20.) Plaintiff asserts that counsel "in fee shifting cases are entitled to compensation for the same tasks attorneys bill their paying clients, including" pre-litigation tasks. (*Id.*) (citing *Wishtoyo Found. v. United Water Conservation Dist.*, Case No. 16-cv-03869-DOC, 2019 WL 1109684, at *6–7 (C.D. Cal. Mar. 5, 2019). The time records submitted by Plaintiff reflect substantial time spent researching and investigating Plaintiff's claim, as well as working with Defendant toward

by this motion represents an agreed upon settlement amount, not a full reimbursement of Plaintiff's combined attorneys' fees and costs. (*Id.*)

5

resolution before the complaint was filed. Thus, upon review of the additional documentation provided in the pending motion, and Plaintiff's explanation for the time expended on this matter, the court finds that Plaintiff's counsel reasonably expended 528.6 total hours of attorney and paralegal time in resolving this matter. (Doc. 21-7 at 2.)

Further, in the order denying Plaintiff's initial motion, the court found that Plaintiff failed to demonstrate that counsel's proposed hourly rates were reasonable because "Plaintiff does not cite any cases in this district holding that counsel's proposed hourly rates are reasonable considering the prevailing local rate for an attorney with the skill required to perform this litigation." (Doc. No. 19 at 5) (citing *Cal. Sportfishing Prot. All. v. Pac. Bell Tel. Co.,* No. 2:21-cv-00073-JDP, 2025 WL 2799004 (E.D. Cal. Sep. 30, 2025)). The court also emphasized that "Plaintiff's counsels' proposed rates far exceed those approved for attorneys practicing environmental litigation in the Eastern District of California." (*Id.*)

In its pending motion, Plaintiff asserts that its counsel is entitled to rates prevalent in the Northern District of California, where Plaintiff's counsel is located, rather than the Eastern District of California, because "counsel are entitled to the out-of-forum rates prevailing where their practice is located" if "'local counsel was unavailable, either because they were unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to properly handle the case.'" (Doc. No. 21-1 at 21) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Plaintiff submits a declaration indicating that it was unable to obtain counsel of the necessary skill and willingness to successfully litigate this complex civil environmental case in the Eastern District. (Doc. No. 21-22 at ¶ 8.) Moreover, Plaintiff attaches as an exhibit to its pending motion a chart showing that if Plaintiff's counsel applied the Sacramento rates that were applied by the court in *California Sportfishing Protection Alliance* to the hours the court has determined Plaintiff's counsel reasonably expended on this matter, the total lodestar would still exceed the amount agreed to by the parties. (Doc. No. 21-7 at 2.)

Accordingly, the court finds that the attorney's fees sought by Plaintiff in the pending motion are reasonable.

    2.    <u>Reasonableness of Civil Penalty Amount</u>

Courts are tasked with reviewing proposed Proposition 65 settlements for reasonableness because such settlements have preclusive effect on other private enforcers who may wish to bring a future claim against the defendant. As a California appellate court has explained:

> The legislature has expressed concern about such settlements, in which a defendant attempts to insulate itself against future litigation by entering into a comprehensive settlement with a private enforcer on terms that enrich the private enforcer but do little to benefit the public . . . In response to this concern, the Legislature did not strip Proposition 65 settlements of preclusive effect, but instead increased oversight of settlements involving private enforcers.

*Consumer Advoc. Grp. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 685 (2008). In determining whether a civil penalty is reasonable, the court considers: (1) the nature and extent of the violation; (2) the number of, and severity of, the violations; (3) the economic effect of the penalty on the violator; (4) whether the violator took good faith measures to comply with Proposition 65 and when those measures were taken; (5) the willfulness of the violator's misconduct; (6) the deterrent effect that the imposition of the penalty will have on both the violator and the regulated community; and (7) any other factor that justice may require. Cal. Health & Safety Code § 25249.7(b)(2)(A)–(G).

Here, if the proposed consent decree were entered as requested, Defendant would be ordered to pay $35,000.00 in civil penalties under Proposition 65. (Doc. No. 21-20 at ¶ 38.) That penalty amount would then be allocated in accordance with California Health and Safety Code sections 25249.12(c)(1), (d), such that 75% of the penalty ($26,250.00) would be paid to the California Office of Environmental Health Hazard Assessment, and 25% of the penalty ($8,750.00) would be paid directly to Plaintiff. (*Id.*) Additionally, Defendant would be ordered to pay Plaintiff $30,000.00 for "oversight costs" of the settlement and pay $30,000.00 in mitigation fees to a third-party nonprofit called the Tahoe Fund. (*Id.* ¶¶ 39, 36.)

In the order denying Plaintiff's initial motion, the court expressed concern that $26,250.00 (roughly 7%) of the $378,421.00 in total settlement funds contemplated by the proposed consent decree will be paid in civil penalties to the Office of Environmental Health Hazard Assessment, while $322,171.00 (roughly 85%) of the settlement amount, will be paid directly to Plaintiff and Plaintiff's counsel. (Doc. No. 19 at 7.) The court found that it could not find this penalty

7

reasonable because "Plaintiff fail[ed] to provide any evidence as to the profitability of Defendant's enterprise from which the court could determine the extent of the economic effect of the $35,000 penalty," failed "to provide any evidence of the nature or extent of Plaintiff's alleged violations," and failed "to indicate whether Defendant's violations were willful (other than to say that Defendant continues to deny any violation)." (*Id.*)

In the pending motion, Plaintiff provides further explanation to show the proposed civil penalty satisfies the seven factors detailed above.

As to factors one and two, the nature and extent of the alleged violation and number and severity of violations, Plaintiff alleges that "the pentachlorophenol contamination associated with [Defendant's] actions at the Facilities poses cognizable human health and environmental harm risk, including by threatening to contaminate drinking water" and that Plaintiff alleges "the violations have been occurring since at least June 10, 2020, and are continuing." (Doc. No. 21-1 at 27–28.) Plaintiff clarifies that Defendant's exposure is mitigated because Defendant "agreed under the settlement to change its practices in a way that benefits public health and the environment." (*Id.* at 28.)

As to factor three, the economic effect of the penalty on the violator, Plaintiff explains that, because this case settled prior to fact discovery, Plaintiff "has limited information regarding the profitability of [Plaintiff's] three Facilities." (*Id.*) However, Plaintiff contends that, based on "the size of the facilities compared to other utilities and the fact that [Defendant] agreed to implement the injunctive measures as part of its continuing operations at the Facilities," the civil penalty is in line with a number of consent decrees listed by Plaintiff in its motion. (*Id.*)

As to factor four, Defendant's good faith measures to comply with Proposition 65, Plaintiff points to the fact that Defendant "responded to [Plaintiff's] notice letters before litigation was initiated," "engaged in over one year of settlement negotiations," "hired its own consultant to assess alleged contamination and proposed remedies," and "agreed to stop storing utility poles treated with pentachlorophenol at the Facilities and to mitigate environmental harms from handling and storing contaminated poles at the Facilities." (*Id.* at 28–29.)

As to factor five, the willfulness of Defendant's conduct, Plaintiff acknowledges that

while it "is not in a position to determine the willfulness of [Defendant's] conduct," Defendant's "response to [Plaintiff's] notice letters indicates to [Plaintiff] that Defendant was open to addressing the alleged violations identified in the notice letters as opposed to continuing operations despite the notice letters, which might have otherwise indicated willful misconduct." (Doc. No. 21-1 at 29.)

As to factor six, the deterrent effect that the penalty would have on both the violator and the regulated community, Plaintiff states that by Defendant's decision to "respond to [Plaintiff's] notice letters and discuss potential resolution, [Defendant] effectively avoided protracted litigation and additional costs." (*Id.* at 30.) Further, the proposed civil penalty "provides an incentive for both [Defendant] and the regulated community as a whole to avoid discharges or releases of listed chemicals in the first place, and to focus on proactively addressing such issues if they arise," as opposed to challenging the discharges through protracted litigation. (*Id.*)

As to factor seven, any other factor that justice may require, Plaintiff notes that, despite the court expressing concern at the proportion of the total settlement amount dedicated to attorneys' fees as compared to civil penalties, numerous federal and state courts have found Proposition 65 consent decrees with a higher portion of the total settlement amount going to attorneys' fees reasonable. (*Id.* at 30–31) (citing cases).

Finally, in its order denying Plaintiff's initial motion to enter the consent decree, the court stressed that the California Attorney General's office had expressed concern with the proposed consent decree, but Plaintiff had not indicated whether those concerns were addressed. (Doc. No. 19 at 7–8.) In its pending motion, Plaintiff clarifies that it did work with the Attorney General's office to resolve those concerns. (Doc. No. 22 at ¶¶ 36–45.) Plaintiff further indicates that it did not include those written communications at the request of the Attorney General's office. (*Id.* at ¶ 50.) The Attorney General's office did, however, allow Plaintiff to submit an email with the pending motion confirming that the office did not object to the proposed settlement. (*Id.* at ¶ 52; Doc. No. 22-6.)

Accordingly, the court finds that Petitioner has addressed the concerns expressed in the court's order denying Plaintiff's initial motion to enter the consent decree, and that the parties'

proposed civil penalty is reasonable. Thus, the court will grant the motion to enter the parties' consent decree.

## CONCLUSION

For the reasons explained above,

1.    Plaintiff's motion to enter the parties' consent decree (Doc. No. 21) is GRANTED;

2.    The parties' proposed consent decree (Doc. No. 21-20) is hereby incorporated by reference and the parties shall comply with all terms set forth therein; and

3.    The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:    **February 17, 2026**

_____

Dena Coggins
United States District Judge

10